# Duncan *v.* Duncan, Appellant (No. 2).

*Practice, Supreme Court—Appeals—Statement of question involved—Findings of fact—Transfer of property—Fraud—Evidence.*

1. In considering an appeal the Supreme Court will not go beyond the points raised by the statement of the questions involved.

2. A statement of the question involved "Can a husband transfer his personal property in payment of his debts, regardless of coverture?" does not properly raise the question whether or not he did so.

3. This court will not reverse the findings of fact of the court below unless clear error is shown.

4. Nor will it reverse a finding that an alleged transfer of property was fraudulent, where the only testimony to sustain it was by a hostile witness, where writings relied upon are not produced and

their absence is not explained, and the case is full of suspicious circumstances which tend to show the fraudulent character of the transfer.

5. A party to a suit cannot be heard to complain regarding a decree in personam against a third party.

Submitted September 29, 1919. Appeal, No. 68, Oct. T., 1919, by defendant, from decree of C. P. Cambria Co., June T., 1918, No. 2, on bill in equity in case of Mary E. Duncan v. Gertrude H. Duncan. Before BROWN, C. J., STEWART, WALLING, SIMPSON and KEP-HART, JJ. Affirmed.

Bill in equity for an injunction, accounting, and to declare a transfer of property fraudulent. Before BAILEY, P. J., specially presiding.

A decree was entered for plaintiff in accordance with the prayers of the bill. Defendant appealed.

*Error assigned* was the decree of the court.

*Forest & Percy Allen Rose,* for appellant.

*J. Earl Ogle, Jr.,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 5, 1920:

Plaintiff in her bill in equity alleges that she is the wife of Charles E. Duncan, and defendant is his sister; that he has wilfully and maliciously deserted plaintiff and has failed and neglected to provide suitable maintenance for her; that she has filed a bill in equity against him under the provisions of the Acts of May 23, 1907, P. L. 227; April 27, 1909, P. L. 182, and July 21, 1913, P. L. 867, to obtain a seizure and sale or mortgage of his property to secure her suitable maintenance, that he was the owner of certain stocks and money, the details of which were unknown to her, but which in pursuance of a conspiracy to conceal all his tangible property he had transferred to defendant in fraud of plain-

tiff's marital rights. The bill prayed discovery, an accounting, a decree that the transfer was a fraud on plaintiff, that defendant was a trustee of the property, an injunction against disposing of it, and general relief.

The answer admitted the prior proceedings between plaintiff and her husband, and the transfer of the property by plaintiff's husband to defendant, but averred it was made in good faith in trust for his mother, as payment on account of a large indebtedness owing by him to his mother. It also averred he had obtained a valid divorce from plaintiff.

By agreement of the parties the evidence taken in the prior case was used in this. At that time this case was in the same position as the other, viz: no replication had been filed, no rule had been taken to file one, and the parties had proceeded throughout exactly as if it had been filed. Later plaintiff applied for, and under objection and exception obtained leave to file a replication nunc pro tunc as if a date prior to the trial; and about a month and a half later defendant asked the court to reopen the case without giving any reason whatever for her request, and without even stating she had evidence she wished to produce. The court refused the motion and granted an exception. An adjudication was filed finding in favor of plaintiff, both parties excepted, the exceptions were dismissed, a decree entered for plaintiff, and defendant now prosecutes this appeal.

The statement of the questions involved, beyond which the court will not go in considering the appeal (Willock v. Beaver Valley R. R. Co., 229 Pa. 526; Smith v. Lehigh Valley R. R. Co., 232 Pa. 456) are five in number: (1st.) Under the act above referred to can the court enter a decree in personam against a nonresident husband, who deserted his wife in another state? (2d.) Must the wife be domiciled in the county where the action is brought? (3d.) Can a husband transfer his personal property in payment of his debts, regardless of coverture? (4th.) Did the court err in allowing the repli-

cation to be filed nunc pro tunc? (5th.) Did it err in refusing defendant's motion for a rehearing?

The court having found, upon ample evidence, that plaintiff was wrongfully deserted by her husband in Johnstown, Cambria County, in this State, where they were then residing, and where plaintiff has always since resided, the first and second of those questions are concluded. Moreover, defendant herein cannot be heard to complain regarding a decree in personam against a third party, and if she could we would decide the decree proper in view of the general appearance entered for plaintiff's husband. The fourth and fifth of the above questions, have been fully answered in our opinion in plaintiff's suit against her husband, filed herewith.

Can a husband transfer his personal property in payment of his debts, regardless of coverture? He can; and as this question does not raise the point whether or not he did so in this case, we might, under our rule regarding the statement of the question involved, decline to consider the matter further. We prefer, however, to treat the case as if the question were proper in form.

Admittedly the stocks and cash were once the property of plaintiff's husband, and for fourteen years were held by defendant for him. The allegation is that on or about December 22, 1916, he transferred them to defendant, in trust for his mother, in part payment of a note for $46,000 which he owed his mother for money loaned; the amount of indebtedness being calculated by the husband about that time. Neither the calculation nor the note was produced at the trial, and no explanation was given why they were not. The transfer was made when both plaintiff's husband and defendant were on bad terms with plaintiff, and he was trying to lay grounds for obtaining a divorce from her. It is impossible to read the letters in evidence without so concluding. When he believes she will not come from Buffalo to Johnstown he writes that he can get a home easily

and asks her to come, the tone of the letters being such as to cause any one to doubt his sincerity. When he writes her after her compliance with his request, the language is brutal. Just one week before the transfer was made he wrote her "Dear Madam: This is an order for you to secure the services of any good lawyer to defend you in a divorce suit, which, if you do not institute within a reasonable time the writer will. I will be financially responsible for your attorney's fee in your defense in this connection. Very truly Yours, Charles E. Duncan." When she would not apply for a divorce he deserts her here, writing to her from another state: "I hope that I will never see or hear from, or of, you, or any one connected with you again," locates himself at Reno, Nevada, the home of easy divorces, and alleges he there obtained a divorce which, however, is invalid in this State.

The only person called to prove the alleged transfer was the defendant herself. She was a most hostile witness, even saying in her testimony, when speaking of plaintiff: "In fact, she is nothing in the world but a fiery story teller." Her testimony, when seen in print, creates an unfavorable impression throughout, and must have sounded worse than it reads. Defendant knew at the time of the transfer what the relations between the plaintiff and her husband were, but did not disclose them to the attorney who was called in to aid in the transfer; and she evidently knew also of her brother's intention to endeavor to obtain a divorce from plaintiff. The question we are called upon to decide, therefore, is: Is a trial judge compelled, under such circumstances, to accept as verity the statements of a hostile witness, in the absence of the production of the note alleged to show the indebtedness or any explanation of the failure to produce it, and of proof of any valuation being placed upon the securities which it was alleged were transferred on account of that indebtedness, or why they were not transferred directly to the

mother instead of to defendant as trustee; or may he, starting with the admitted fact that the securities had been purchased and paid for by the husband, conclude that the evidence produced is insufficient to show a bona fide transfer thereof to defendant as trustee for the mother? Inasmuch as the evidence teems with suspicious circumstances, ample to justify a jury in finding the transfer invalid, it must be held sufficient to sustain the chancellor's finding, which for that reason will not be disturbed on appeal: First National Bank of Pittsburgh v. McKinley Coal Co., 210 Pa. 76.

The decree is affirmed and the appeal dismissed at the costs of appellant.