## Lansinger v. Lansinger et al.

*J. R. Sheppard*, for petitioner.

*Maurice Chaitkin* and *Richard W. Ahlers*, for defendants.

RIMER, P. J., eighteenth judicial district, specially presiding, January 7, 1937.—This is a petition under the Declaratory Judgments Act of June 18, 1923, P. L. 840, amended by the Act of April 25, 1935, P. L. 72.

Petitioner, Verna P. Lansinger, sets forth a marriage with defendant, Earl F. Lansinger, on June 1, 1917, and alleges that on and prior to March 5, 1935, petitioner and this defendant were domiciled and lived together as husband and wife in the City of Pittsburgh, Allegheny County, Pennsylvania; that on the date last mentioned defendant left their common habitation, took up separate lodgings in said city, residing there until some time in October 1935, when he went to the State of Nevada and filed his application for a divorce from petitioner in the second judicial district of the State of Nevada, in and for the County of Washoe, and an absolute decree in divorce was granted by said court on December 24, 1935. Petitioner avers that the decree in divorce aforesaid did not

dissolve the marriage relation between petitioner and defendant for lack of jurisdiction in the said Nevada court thus granting the decree, in that she was not served with process in said proceedings, did not appear in person or by attorney, never authorized any person or attorney to appear for her, and was not resident within the jurisdiction of the court in which said decree was rendered at any time pending the said proceedings nor when the decree was rendered, and never lived with defendant, as his wife, in the State of Nevada, but that the home and marital domicile of petitioner and defendant was and always had been maintained in the State of Pennsylvania. She further avers that some time after the granting of said decree in divorce defendant married Anna Spade Cook, the other defendant in said proceedings, and now resides with her, living together as husband and wife, in the said City of Pittsburgh.

Petitioner avers that she is a native-born resident and citizen of the State of Pennsylvania, for many years domiciled in the City of Pittsburgh, where, with said Earl F. Lansinger, their home and marital domicile was maintained and where petitioner's home and domicile was maintained to the time of the filing of said petition.

Averring that the Nevada court thus granting the alleged decree in divorce had no jurisdiction of the subject matter of the suit in which the decree was entered nor of petitioner, and that its decree in divorce was not such a judgment of a sister State of the Union as entitled it to recognition in the Commonwealth of Pennsylvania, and that the action of defendants in living together as husband and wife is a breach of the marriage existing between petitioner and defendant Earl F. Lansinger and has and will create doubt, uncertainty, confusion and insecurity of petitioner's social and marital status and has and will in the future cause injury to petitioner in her personal and property rights, and that

she is entitled to protection through the courts of this State in and to her said social, marital and property rights and status against the decree in divorce aforesaid as being colorable and oppressive, petitioner prays the court to enter a declaratory judgment in the form of a decree, decreeing that the divorce decree obtained in Nevada by defendant Earl F. Lansinger on December 24, 1935, divorcing defendant from petitioner and above recited, is a colorable one and that it did not dissolve the marriage relation between petitioner and defendant, etc.

To this petition defendant Earl F. Lansinger, in his own behalf and in behalf of his codefendant, filed an answer raising preliminary questions of law, averring that plaintiff is not entitled as a matter of law to the relief prayed for, for the following reasons:

1. The entry of a decree as prayed for will not terminate the controversy existing between the parties hereto.

2. The averment of petitioner that she was not served with process in the divorce proceedings had in the State of Nevada is directly contradicted by the record, a copy of which is attached to the petition. The record of the Nevada court discloses that the petitioner herein was personally served with the process.

3. The averment of petitioner that Earl F. Lansinger deserted her on March 5, 1935, is a mere conclusion.

4. The purpose and effect of a decree in this case will be the annulment of an existing marriage, which annulment is prohibited by the provisions of the Declaratory Judgments Act.

5. Petitioner has failed to allege that said Earl F. Lansinger has any property, real or personal, to which she may be decreed as her rights as wife.

6. Petitioner has a full, complete and statutory remedy.

The preliminary questions thus raised were argued before Judges Rowand, McNaugher, and Egan, of this court. The questions thus raised were decided against respondents by the judges aforesaid, sitting in banc, as will appear by the opinion delivered by Judge Egan

(26 D. & C. 701), and defendants, respondents, ordered to file their answers to the averments of fact in the petition within 15 days after service. This opinion will be referred to later.

Answers were filed by defendants and the case came on for hearing. From the pleadings in the case and the evidence offered the following facts are found:

1. The marital domicile of plaintiff, Verna P. Lansinger, and defendant Earl F. Lansinger for many years prior to their separation on March 5, 1935, was in the City of Pittsburgh, County of Allegheny, State of Pennsylvania.

2. Petitioner has maintained her domicile and residence in the said City of Pittsburgh since then and up to the time of the filing of the petition in this case and continues so to do.

3. Defendant Earl F. Lansinger maintained his domicile after the date of leaving the marital domicile or common habitation of himself and petitioner on March 5, 1935, in said City of Pittsburgh, until some time in October 1935.

4. Petitioner and said Earl F. Lansinger never lived together in the State of Nevada and any marital relation or institution between them never existed in that State.

5. Petitioner during the time beginning with the alleged proceedings brought by said Earl F. Lansinger in the State of Nevada and from the date of their separation on March 5, 1935, until about March 18, 1936, was not in the State of Nevada, never having been within the boundaries of that State.

6. Petitioner was never served personally with any summons in the proceedings aforesaid within the boundaries of the State of Nevada. The summons in the proceedings for a divorce in which the decree in this case was granted was served upon petitioner on November 23, 1935, personally, in the City of Pittsburgh, Allegheny County, Pennsylvania.

7. Petitioner was never served personally within the State of Nevada with the summons in divorce issued in the proceedings in the second judicial district court of the State of Nevada, in and for the County of Washoe, in which the decree of divorce between petitioner and said Earl F. Lansinger was obtained on December 24, 1935.

8. Petitioner did not appear in the proceedings aforesaid either by person or by attorney and never authorized any person or attorney to appear for her therein.

9. Some time in October 1935 Earl F. Lansinger left Pittsburgh for Reno, in the State of Nevada, where he filed application for divorce from petitioner on November 21, 1935, and an absolute decree in divorce on said application was granted and entered of record December 24, 1935, by the second judicial district court of the State of Nevada, in and for the County of Washoe, wherein the findings of fact, conclusions of law and decree of divorce appear as in the next succeeding finding:

10. *"In The Second Judicial District Court of The State of Nevada, In And For The County of Washoe.*

| "EARL F. LANSINGER, "Plaintiff, "—vs— "VERNA P. LANSINGER, "Defendant | No. 51522    Dept. No. 2 Filed 1935 Dec-24-PM 2:04 E. H. BEEMER, *Clerk* |
|---|---|

"HARRY SWANSON, Esquire,
"*Attorney for Plaintiff.*

"*Findings of Fact, Conclusions of Law and Decree of Divorce.*

"This cause having heretofore, on the 24th day of December, 1935, come on regularly to be heard before the above entitled court, without a jury, the undersigned district judge presiding, the plaintiff appearing in person and by his attorney HARRY SWANSON, Esquire, and the defendant not appearing, and it satisfactorily appearing

to the court that the summons herein was duly and regularly served personally upon said defendant, and the time for answering having expired, her default was duly entered herein.

"The plaintiff was sworn and testified in his own behalf; his residence was duly proven, and all the records and files in this case were admitted in evidence, and the case being closed, the cause was submitted for findings and decree.

### "Findings of Fact and Conclusions of Law.

"The court, therefore, finds that all of the allegations of plaintiff in his complaint are true, and, as conclusions of law, that he is entitled to a decree of divorce from the defendant as prayed for on the ground of extreme cruelty.

### "Decree of Divorce.

"It is therefore ordered, adjudged and decreed: That the bonds of matrimony now and heretofore existing between the plaintiff, EARL F. LANSINGER, and the defendant, VERNA P. LANSINGER, be, and they are hereby, wholly dissolved and the parties freed from the obligations thereof, and each of them restored to the status of unmarried persons the same as if this marriage had never existed.

"Done in open court this 24th day of December, A. D. 1935.

"B. F. CURLER,
"District Judge."

11. Sometime after the entry of the decree in divorce on December 24, 1935, purporting to divorce defendant Earl F. Lansinger and petitioner, entered as aforesaid, Earl F. Lansinger, pretending and representing that he is divorced from petitioner by said Nevada decree in divorce, married the other defendant, Anna Spade Cook Lansinger, and resides with her, as husband and wife, in the said City of Pittsburgh, Allegheny County, Pennsylvania.

12. In his marriage aforesaid defendant Earl F. Lansinger entered into such marriage in reliance upon the validity of the decree aforesaid.

13. The marital relationship between petitioner and defendant Earl F. Lansinger has not been dissolved and they are still husband and wife.

14. Under the facts in this case a condition has arisen which necessarily creates doubt, uncertainty, confusion and insecurity as to petitioner's social and marital status.

### Conclusions of law

1. An actual controversy exists between petitioner plaintiff and defendants and antagonistic claims between the parties involved indicate imminent and inevitable litigation.

2. In these proceedings petitioner asserts a legal relation, status and right, that of a marital relationship with one of the defendants, Earl F. Lansinger, in which she has a concrete interest, and there is a challenge and denial of such asserted relation, status and right by the defendants, who have a concrete interest therein.

3. A declaratory judgment and decree in these proceedings will serve to terminate the uncertainty as to the antagonistic claims of the parties and the legal relation, status and rights of the said parties, respectively.

4. No divorce or annulment of marriage is sought in these proceedings.

5. The petition in this case sets forth a cause of action of which the court has jurisdiction under the Declaratory Judgments Act.

6. The court issuing the decree of divorce which is the subject of complaint of petitioner in this case and upon which defendants rely in jurisdiction of their marriage, never acquired jurisdiction of the person of petitioner.

7. The said Nevada court never acquired jurisdiction of the res, so that the proceedings in divorce above referred could become proceedings in rem.

8. Service of the summons of divorce in the proceedings aforesaid issuing out of the said Nevada court, being made upon petitioner in Pennsylvania, did not give said court jurisdiction in said proceedings.

9. The decree in divorce rendered by said Nevada court, without jurisdiction of either the person of petitioner or of the marital res existing between petitioner and defendant Earl F. Lansinger was, therefore, null and void and of no effect as a decree in divorce within the Commonwealth of Pennsylvania.

10. The proceedings in divorce aforesaid are not in rem and did not justify that court in entering a decree as to the res or marriage relation between petitioner and Earl F. Lansinger.

11. Up until the time that Earl F. Lansinger left the State of Pennsylvania for the State of Nevada where the proceedings in divorce were brought, the matrimonial relation was in existence only in the State of Pennsylvania and the husband, never establishing matrimonial domicile with petitioner in the State of Nevada, did not take with him to Nevada the marital relationship between him and petitioner, and the proceedings in Nevada court could not be in rem.

12. The decree in divorce upon which defendants rely in this case could be attacked collaterally by petitioner upon a showing of want of jurisdiction in the foreign court issuing the decree, by extraneous evidence that petitioner was not in Nevada at the time of the proceedings, was never properly served with process in said proceedings, was not represented by counsel therein and the cause of action did not arise within the jurisdiction of the Nevada court.

### Discussion

In the preliminary statement mention was made of the answer of defendants to the petition in this case raising preliminary questions of law. In this were contained the questions of law which defendants deemed

went to the jurisdiction of the court to determine, or to petitioner's legal right to have determined, the disputed matters set up in said petition in a proceeding of this character. The questions thus raised were determined against defendants and they answered on the facts, and the cause was then set down for a hearing on the merits.

This decision of the court was to the effect that the court had jurisdiction of the subject matter of the controversy between the parties as it appeared in the petition, and that a cause of action was sufficiently pleaded therein. But when defendants went to trial on the merits their contentions included a challenge to the jurisdiction, as will be noted, viz.:

1. There had not been sufficient evidence offered to show that the decree entered by the Nevada court was not such a decree as entitled it to recognition in this court under the full faith and credit clause of the Constitution of the United States.

2. Petitioner failed to produce sufficient evidence to contradict or overcome the specific findings of fact and conclusions of law of the Nevada court decree.

3. The Declaratory Judgments Act does not provide for the termination of an issue such as this for the reason that a decision upon the issue presented to the court will not serve to terminate the uncertainty of the controversy giving rise to the proceedings.

Defendants in their brief have raised additional questions:

1. Petitioner has produced exemplified copies of only a part of the record of the Nevada court, viz., the summons and the final decree.

2. The decree contains a definite finding that petitioner was personally served and this is a bar to the relief sought unless the whole record of the Nevada case, if produced, would show that she was not subject to the jurisdiction of that court.

3. The status of petitioner can be determined only by what the Nevada record discloses and the court cannot help petitioner unless the record in its entirety is before it.

Taking up these contentions in their order, we find that defendants support this contention upon the theory that petitioner here has the same burden in attacking the record of the Nevada decree as if she were a plaintiff seeking to enforce a judgment based upon the records of a foreign court. This might be true if the dispute related to matters which were adjudicated by the Nevada court in the proceedings which terminated in the decree of divorce which is set up by petitioner and admitted by the defendants as having been fully relied upon when they entered into the marriage ceremony between them. But such is not the controversy here. Instead, the averment of the petition and the foundation of the controversy here is that the Nevada court had no jurisdiction over the persons of petitioner nor over the marriage relationship between the parties, since the latter was an indivisible res and one which defendant Earl F. Lansinger could not carry with him on his trip to Nevada.

This contention cannot stand against the rules laid down in Haddock v. Haddock, 201 U. S. 562, 577, as well as in our own recent cases, which cite Colvin v. Reed, 55 Pa. 375, and Price et al. v. Schaeffer et al., 161 Pa. 530. Speaking of the latter case, we find nothing to contradict or weaken the statement of Mr. Justice Mitchell when he concludes upon the authority of decisions of the Supreme Court of the United States that jurisdiction is always open to question, even upon facts affirmatively asserted in the record, and that our Supreme Court conforms to that as the established rule in the Supreme Court of the United States, the ultimate authority on all questions depending upon the Constitution and statutes of the United States. He further states that this same rule prevails in the courts of the majority of the States and that it would be contrary to sound policy to deny to our own

citizens a defense against judgments obtained in other States, out of a comity which such States refuse to us. And our Supreme Court, speaking later in Commonwealth ex rel. v. Kelly et al., 287 Pa. 139, 143, recognized the general rule that a judgment of a court of competent jurisdiction is final and conclusive and must be given full faith and credit in other jurisdictions as to all matters in controversy, or which, with proper diligence, might have been interposed as a defense in the original action. This is followed by the further statement:

"It is also equally well settled that a judgment is conclusive only in so far as responsive to the pleadings, and, consequently, in an action brought on a judgment of another state, evidence may be offered to show the subject-matter involved was not included in the proceeding in the foreign jurisdiction, or that the latter court was without jurisdiction of the cause of action or of the party", citing Price et al. v. Schaeffer et al., supra.

Our courts will receive in evidence facts which go to show a lack of jurisdiction in a foreign court granting a decree in divorce to a spouse who so evidently leaves the marital domicile for the very purpose of obtaining a decree in one of the courts other than those having jurisdiction of the persons of both of the parties and of the subject matter. The very record under which defendant claims a divorce to have been adjudicated and decreed between him and petitioner, in connection with the undisputed evidence in this case, shows that the cause of action arose outside of the boundaries of the State of Nevada. Defendant Earl F. Lansinger, in that petition, charged extreme cruelty on the part of this petitioner towards him for his cause of action, and the Nevada court in its findings of fact and conclusions of law granted the divorce "on the ground of extreme cruelty". From this it is evident that the sole ground upon which the divorce was granted and the only cause of action upon which defendant obtained his divorce must have arisen in the place of marital domicile, which for many years prior to the cause

of action had been in the County of Allegheny, Pennsylvania, and at least could never have arisen in the State of Nevada, since it is uncontradicted that the parties to the divorce action never lived there.

When all the surrounding facts in this case are considered it may well be determined that the decree of divorce upon which defendants rely was a fraud not only upon the petitioner but upon the Commonwealth of Pennsylvania. He left the State of their domicile and the forums which had jurisdiction of himself and of this petitioner sometime in October 1935. On November 21st following his action for divorce was begun in the Nevada court, and sometime in the early part of the following January we find him back in Pittsburgh with a new wife, in brazen defiance of the rights of petitioner and the laws of this Commonwealth. In speaking of what might well be termed the divorce "racket" of the courts of Nevada, one must admire the restraint of Mr. Justice Simpson when he spoke for our Supreme Court in Duncan v. Duncan, 265 Pa. 471, describing the action of a husband who had adopted a similar line of action, by saying he ". . . locates himself at Reno, Nevada, the home of easy divorces, and alleges he there obtained a divorce which, however, is invalid in this State".

We conclude, therefore, that the uncontradicted evidence in this case takes the Nevada decree out of the comity rule urged by defendants and, under the authority of an unbroken line of decisions in this State, followed in Commonwealth ex rel. v. Manzi, 120 Pa. Superior Ct. 360, find that a successful attack has been made on this decree by petitioner, whose rights are directly involved, and are compelled to conclude that the pleadings and evidence in this case show that petitioner was not in Nevada at any time during the proceedings, that she was never properly served with process, did not appear, was not represented by counsel, and that the alleged cause of action did not arise in this foreign jurisdiction. It is equally apparent that the alleged ground of divorce arose

in this Commonwealth and that the courts of this Commonwealth had jurisdiction over the cause of action and the persons of all of the parties involved. The foregoing facts being established in these proceedings, the temporary sojourn of Earl F. Lansinger in Nevada could not give that court jurisdiction and the Nevada divorce was a nullity so far as it could affect, in this State, the marriage relation between petitioner and said Earl F. Lansinger.

We need not cite further the long line of cases from which it conclusively appears that the jurisdiction of the court in the case of a foreign judgment may be attacked by extraneous evidence, and the record of that judgment contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist that record will be a nullity notwithstanding it may recite that they did exist. In this connection we cite Thompson v. Whitman, 18 Wall. (85 U. S.) 457, since followed not only by the Supreme Court of the United States but also by our own Supreme Court.

The jurisdictional requisite, that service of process from the Nevada court upon petitioner must have been a lawful service, is wholly lacking here. We have only an extraterritorial service, as conclusively established by the evidence and admitted under the pleadings themselves. To meet the averment of petitioner that she was not served with process in that proceeding, the answer of Earl F. Lansinger, adopted by his codefendant, is so evasive as not to amount to a denial. The answer is:

"Respondent has no knowledge that petitioner was not served with process in the Reno suit; on the contrary, he believes that she was so served for the reason that the decree entered by the Nevada court recites that the summons in said case was duly and regularly served personally upon the petitioner".

Defendant must have known that the return upon the summons in this case showed service upon this petitioner on November 23, 1935, at Pittsburgh, Pennsylvania. If

by any possibility he did not have this knowledge, the easy and definite opportunity of acquiring it was to be found in the record of the proceedings which he brought in the Nevada court.

The second position of defendants, that petitioner failed to produce sufficient evidence to contradict or overcome the specific findings of fact and conclusions of law of the Nevada court, cannot stand for a moment in the face of the evidence before the court in these proceedings. Such evidence established beyond peradventure that the Nevada court never had jurisdiction of the person of petitioner, and this evidence is corroborated by the evasive answer of defendants in respect thereto. And this answers, as well, the foregoing contention as amplified by defendants' brief to the effect that the findings of the Nevada court in the divorce proceedings were a bar to the relief sought unless the whole record of the Nevada case would show that she was not subject to the jurisdiction of that court. Defendants were satisfied to go to trial upon the merits with the pleadings as they stood. There was no request on their part for other or further exemplification of the records. Even if, elsewhere in that record, there might be a repetition of the finding that "the summons was duly and regularly served personally upon said defendant", such finding would be successfully contradicted by the evidence offered, particularly by the return made to that very court of the service of the summons in Pittsburgh. We are not concerned with what might or might not be, under the laws of Nevada, a due and regular service of such summons, since we do not have those laws before us. We only say that, in Pennsylvania, this was not a service at all.

This leaves only the one remaining contention of defendants raised at the trial, which is that the Declaratory Judgments Act does not provide for the determination of an issue such as this, for the reason that a decision upon the issue presented to this court will not serve to termi-

nate the uncertainty of the controversy giving rise to the proceedings.

While substantially the same question was raised by defendants in this case in their "answer raising preliminary questions of law" and was determined against them, defendants, upon the trial on the merits, again insist upon this position. For this reason that contention will be answered here.

It was determined by Judges Rowand, McNaugher, and Egan, sitting in banc, that the several contentions of defendants, challenging the jurisdiction of this court in the present case, were not well grounded. Their opinion, delivered by Judge Egan, is relied upon and adopted by the trial judge, not only because it must control as the law in this case relative to the jurisdiction of the cause of action as set forth in the petition, but also because of the unanswered and unanswerable logic of the opinion itself. As preliminary to a trial on the merits, defendants, very properly, took advantage of the fifth section of the Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended April 25, 1935, P. L. 72, authorizing defendants to raise any question of law which would go either to the jurisdiction of the court or to petitioner's legal right to have the disputed matter determined in this proceeding. In this preliminary answer defendants not only raised the general question of jurisdiction but also the matters which were deemed objectionable in the form of the cause of action under the pleadings, viz., the petition in this case.

Now that the evidence is in and the time has come for a final decree by the court, the trial judge desires to specifically concur with the opinion handed down by Judge Egan, and adds thereto only certain authorities which the evidence offered seems to render applicable.

Since we do not have a definite expression of our appellate courts upon the question of jurisdiction herein involved, decisions from the appellate courts of sister States may well be considered. The Supreme Court of

Connecticut handed down a decision in 1935 which is · in point. Upon an appeal from the Superior Court of Fairfield County in that State, in the case of Mills v. Mills et al. (Conn. 1935), 179 Atl. 5, the court had under consideration a Reno divorce in proceedings under the declaratory judgments act of that State. The petitioner had married W. S. Mills in 1908 and lived with him in Connecticut until 1931. In October of that year he left his home and went to Reno, Nevada. It appears that the other woman in the case had no knowledge of his former marriage and went with him upon the promise that he would marry her and settle down wherever they could find work. Telling his wife that he would be back in a few weeks, he made some sort of property settlement upon her, and there was at least a suspicion on her part that he was going away to secure a divorce. He reached Reno, lived there for six weeks, brought his action in divorce, which was granted on January 9th of the following year. The trial court found that he had left the marital domicile with the intention of never returning, and had agreed with the young woman who accompanied him, after she had been told of his former marriage, that as soon as the divorce was granted they would be married and live in her apartment at Reno. There was also a finding by the trial court that Mills intended to remain in Nevada for an indefinite period, live there indefinitely if he could find work, had no intention of making a home elsewhere, and that Reno was his bona fide domicile. The deserted wife filed her petition for a declaratory judgment, naming her husband and the woman he had married after his divorce as defendants, and asked a decree that the divorce thus obtained in Nevada be declared colorable; also that it did not dissolve the marriage relation between petitioner and the deserting husband. Upon the trial the foregoing facts were found and relied upon by the trial court in giving judgment for defendants, and from this the appeal was taken. The Supreme Court in its opinion commented on the facts as to the domicile of the husband in Nevada as

a necessary condition precedent to the jurisdiction of the courts of that State, and concluded that the husband was not in good faith domiciled in Nevada but was there for a mere temporary or special purpose, and that his domicile in Connecticut persisted because a new one had not been acquired. The following extract from the opinion of the Supreme Court may well be read into this opinion as specially applicable and as justifying the reversal of the trial court with a direction to enter judgment in accordance with the opinion:

"The subordinate facts and the evidence do not support the finding of the trial court that Reno was the bona fide domicile of the defendant Mills during his sojourn in Nevada. We conclude that, as Florence D. and Winfield S. Mills were married in Connecticut and lived there as husband and wife until he deserted her in 1931 and went to Nevada, the domicile of matrimony between these parties was Connecticut and there remained. Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 527, 50 L. Ed. 867, 5 Ann. Cas. 1. Furthermore, she remained in Connecticut and did not appear and was not represented in the Nevada case, while Mills, the plaintiff in that action, who went to Nevada merely for the purpose of obtaining a divorce and with no bona fide intention of establishing a permanent residence there, was not a domiciled resident of Nevada at the time the action was brought or the judgment rendered. It follows that the district court of the Second judicial district of the state of Nevada in the county of Washoe was without jurisdiction to enter any judgment affecting the status of Florence D. Mills as wife of the defendant Winfield S. Mills; and she is entitled to a judgment declaring that the decree of divorce did not affect the marriage relations between her and the defendant": Mills v. Mills et al., supra.

We have read with profit the opinion of the Supreme Court of Wisconsin found in Miller v. Currie et al., 208 Wis. 199, 242 N. W. 570. There Jennie Miller brought an action under the uniform declaratory judgment act of

that State in which she set forth that a common-law marriage was entered into between James Currie and her mother, terminated by the death of said Currie, that she was the only child and the lawful issue of such marriage, that later he contracted a bigamous marriage with defendant Lucy Currie, and that the other two defendants were the illegitimate issue of such union. Alleging that defendants now claimed that she was not the issue of any lawful marriage by said Currie to her mother and asserted that defendant Lucy Currie was the lawful widow and her codefendants his sole and only lawful children, she prayed that she might have judgment for declaratory relief adjudging that she was the lawful child of James Currie, deceased.

Upon demurrer, the trial court held that the complaint did not state facts sufficient to constitute a cause of action and that the court had no jurisdiction of the subject matter thereof. This demurrer was sustained and the appeal taken to the Supreme Court, in which an opinion was handed down reversing the court below and remanding the case to the trial court for further proceedings.

It will be remarked that the act being then construed was identical with our Declaratory Judgments Act as it stood prior to the amendment of 1935, and did not have, at least when this case was decided, the benefit of the extensive widening of the remedial features of the original act which appear in the amendment. In this respect the Supreme Court evidently relied upon section 12 declaring the act to be remedial.

After stating that it did not appear that there was now, in any court having jurisdiction, a controversy between the parties to which might properly be presented the question of plaintiff's status, nor that the bringing of the action was an effort to forestall a determination of the status of plaintiff in some other court having jurisdiction of the parties or having jurisdiction in respect to a rem about which there existed a controversy in which

it would be necessary to determine the plaintiff's status; that if, upon trial, it should develop that plaintiff's reputed father had left an estate now being administered at the place of domicile, and that a court having jurisdiction of the estate had jurisdiction to determine the controversy there presented, then it would be a question for the trial court as to whether or not it should retain jurisdiction, the court then proceeded, in construing the declaratory judgments act, by holding that it was an effort to provide a tribunal in which controversies might be determined which could not otherwise be presented for determination to a court having jurisdiction. Apparently the complaint was drafted for the sole purpose of determining whether or not a question of status could be determined under the declaratory judgments act, independent of any controversy to other rights:

"Subject to the limitations indicated above, it must be held that such action might properly be entertained by a court".

As evidencing the legislative intent to give broad remedial powers to the court under the Declaratory Judgments Act, the following extracts will be noted:

"Section 1. . . . courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . .

"Section 2. . . . Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity. . . .

"Section 3. . . . A contract may be construed either before or after there has been a breach thereof."

Section 4 provides that a fiduciary may have a declaration of rights in respect to creditors, powers, etc.

"Section 5. . . . The enumeration in sections two, three, and four does not limit or restrict the exercise of the general powers, conferred in section one, in any pro-

ceeding, where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

Section 6 of the original act reads as follows: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

For this we have substituted the amended section 6 under the Act of 1935, supra, which follows:

"Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present; but the case is not ripe for relief by way of such common law remedy, or extraordinary legal remedy, or where the party asserting the claim, relation, status, right, or privilege and who might bring action thereon, refrains from pursuing any of the last mentioned remedies. Nothing

herein provided is intended to or shall limit or restrict the general powers or jurisdiction conferred by the act hereby amended; but proceeding by declaratory judgment shall not be permitted in any case where a divorce or annulment of marriage is sought."

Upon the question of insufficiency in the pleadings and the alleged variance between the pleadings and the evidence, counsel for petitioner has submitted several authorities, reference to which has been inadvertently omitted. Although somewhat out of order they are here referred to.

The opinion of the present Chief Justice Kephart, written while he was still a member of the Superior Court, in the case of Tarentum Lumber Co. v. Marvin, 61 Pa. Superior Ct. 294, lays down the following rule:

"Though the allegata and probata may not entirely agree, if the defendant is not misled and the variance could in no manner affect the trial on its merits, or set up a different cause of action, or impose any different burden on the defendant, the variance would not be considered material".

This case is cited for the following rule:

"Where in an action of assumpsit the plaintiff's statement sets forth an oral contract, and the proofs establish the oral contract, and further show a confirmatory letter addressed to the defendant and in his possession, the failure of the statement to set forth the letter is not fatal variance."

See also Young v. Quaker City Cab Co., 87 Pa. Superior Ct. 294.

Having come to the conclusion that, under the act, particularly as now amended, the court has power in these proceedings to declare the rights, status, and legal relations between the parties, that an actual controversy exists between them, and being satisfied that antagonistic claims are present between the parties involved in this case which indicate imminent and inevitable litigation, and that in these proceedings petitioner asserts a legal

relation, status or right in which she has a concrete interest and which are challenged by the adversary parties who have or assert a concrete interest therein, the court is of the opinion that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to these proceedings.

We are further of the opinion that no statute provides a special form of remedy for causes of the present type. We hold that the Nevada divorce, above referred to, was only a colorable one and void and of no effect within the territorial limits of the Commonwealth of Pennsylvania.

Since petitioner does not, in these proceedings, seek a divorce or annulment of marriage, judgment will be entered in accordance with the facts and conclusions of law as heretofore found.

### Declaratory judgment

And now, January 7, 1937, it is ordered, adjudged and decreed that the decree in divorce entered in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, in the case wherein Earl F. Lansinger, defendant herein, is plaintiff and Verna P. Lansinger, petitioner herein, is defendant, at no. 51522, department no. 2, filed therein on December 24, 1935, purporting to divorce defendant Earl F. Lansinger from petitioner, Verna P. Lansinger, is a colorable one, invalid within the Commonwealth of Pennsylvania, and that the said decree did not dissolve the marriage relation between petitioner, Verna P. Lansinger, and defendant Earl F. Lansinger theretofore existing.